UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHEABRA L. SIMPSON, PhD.,

      Plaintiff,

                                            CASE NO. 04-74162
v.                                      HON. LAWRENCE P. ZATKOFF

UNITED AUTO WORKERS LOCAL 6000,
INTERNATIONAL UNITED AUTO WORKERS,
and State of Michigan Department of Corrections,
Jointly and severally,

      Defendants.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the Theodore Levin United States Courthouse,
in the City of Detroit, State of Michigan, on

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Plaintiff's Response to the Court's Order to Show Cause [17], Defendant Unions' Response to the Court's Order to Show Cause [16] and Motion to Dismiss, or in the Alternative, for Summary Judgment [4], and Defendant Michigan Department of Corrections' Response to the Court's Order to Show Cause [15] and Motion for Summary Judgment [3]. The motions have been fully briefed. The Court finds that the facts and legal arguments are adequately presented in the parties' papers and the decisional process would not be significantly aided by oral argument. Therefore, pursuant to E.D. MICH. LR 7.1(e)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted. For the reasons set forth below, Defendant

Unions' Motion to Dismiss, or in the Alternative, for Summary Judgment [4] will be GRANTED and Defendant Michigan Department of Corrections' Motion for Summary Judgment [3] will be GRANTED.

## II. BACKGROUND

Plaintiff Sheabra Simpson, an African-American female, brings this action against Defendant United Auto Workers Local 6000 ("Local"), and her former employer, the Michigan Department of Corrections ( "MDOC"), under § 301 of the Labor Management Relations Act of 1947, ("LMRA"), 29 U.S.C. § 185. Plaintiff has also named Defendant International United Auto Workers ("International"). Plaintiff alleges that Defendant MDOC terminated her employment in violation of a Collective Bargaining Agreement ( "CBA"), between Defendant Local and Defendant MDOC. Plaintiff alleges that Defendant Local breached its duty of fair representation by mishandling numerous grievances she filed against Defendant MDOC. Plaintiff also alleges that Defendant Local's and Defendant MDOC's employees interfered with her employment contract and her rights under the CBA, because of her race, in violation of 42 U.S.C. § 1981. Finally, Plaintiff seeks to overturn an arbitrator's decision upholding Plaintiff's termination on the grounds that the grievance challenging the termination was not timely filed.

**A.     Facts**

At the time this suit was filed, Plaintiff had another related suit pending against Defendant Local.[1] In the previous case, Plaintiff brought Title VII and § 1981 claims against Local. On July 6, 2005, this Court granted Local's motion for summary judgment in that case. In that opinion, the Court thoroughly reviewed the background facts of the case. The Court will briefly review the facts

---

[1] *Simpson v. UAW*, No. 04-70978 (E.D. Mich. July 6, 2005).

here, with a more detailed description of facts specifically relevant to the current case.

Plaintiff began began working as a psychologist with the MDOC at the Western Wayne Correctional Facility in 1989. Plaintiff also became a dues-paying member of Defendant Local. Plaintiff claims she had extreme problems with her MDOC supervisors, and filed numerous grievances for "improper 'stop orders,' physical assault by a supervisor, improper insubordination investigation, improperly issued interim rating for charges fabricated by management, continued harassment by management, hostile work environment created by management, memorandum written to prisoners putting Plaintiff's life in danger, disparate treatment, [and an] improper performance evaluation." Plaintiff's Response to Defendant Unions' Motion to Dismiss, or in the Alternative, for Summary Judgment, at 4-5.

In July, 2000, amidst the above employment problems with the MDOC, Plaintiff was appointed to a full-time union staff position by then president of Defendant Local, Lynda Taylor-Lewis. As an appointed full-time union official, Plaintiff was placed on a paid leave of absence from her position with Defendant MDOC pursuant to Article 7D of the CBA.

The State filed an administrative complaint against Plaintiff on November 9, 2001. On December 12, 2002, Plaintiff and the State agreed to a consent order dismissing all counts of the administrative complaint except Count IV, which alleged fraud in connection with Plaintiff's application for a license to practice psychology. *See* Defendant's Appendix to Brief in Support of Defendant Unions' Motion to Dismiss, or in the Alternative, for Summary Judgment, at Ex. 1. On her 1989 State of Michigan license application, Plaintiff indicated that she received a Master's Degree when she had never received such a degree. She did, however, complete master's level course work on her way to obtaining her doctorate in psychology. Thus, she was apparently

qualified for the position despite her misstatement. The consent order provided for a three-month suspension of her license to practice psychology and a one-year term of probation. *See id.*

According to Defendant Local, approximately 2,600 union employees took early retirement from the State of Michigan in November, 2002, shortly before Plaintiff learned that her license would be suspended. Local alleges that the retirements created a budget shortfall of approximately $28,000.00 per pay period because there were fewer union members to pay dues. *See* Rivera Dep. at 31, attached as Ex. 3 to Defendant Local's Appendix.

On December 17, 2002, at an executive meeting of the Defendant Local's Board, an African-American female Board member named Dolores Ansari moved to reduce the Defendant Local's staff by laying off the least senior secretary, the least senior bookkeeper, and the least senior general clerk. These three positions were held by white females named Carol Thompson, Mary Blasius, and Cyndi Bilaski, respectively. Ms. Ansari also moved to return "all Presidential appointees to their State jobs effective January 20, 2003, with the exception of the Legislative Liaison and 1-800 Line [employees], and also abolish the specialist position." Executive Board Meeting Minutes, December 17, 2002, attached as part of Ex. 1 to Defendant Local's Appendix. The Board adopted Ms. Ansari's motion.

The Board's action required Plaintiff, as an appointee, to return to her job with the MDOC effective January 20, 2003. Defendants assert, however, that because Defendant Local's President, Mary Ettinger, knew that Plaintiff's psychology license was suspended at the time, Ms. Ettinger promised to retain Plaintiff in her local union staff position so that Plaintiff could continue to receive her salary. *See* Ettinger Dep. at 117-18; Simpson Dep. at 49. Despite her promise, Ms. Ettinger testified in her deposition that pressure from the members of the Executive Board forced her to

remove Plaintiff from her staff position as of February 16, 2003. *See* Ettinger Dep. at 117-18. She was, however, able to negotiate with Defendant MDOC to allow Plaintiff to be placed on annual leave until her suspension was over on March 12, 2003. Thus, according to Defendants, Plaintiff suffered no loss in wages as a result of her license suspension due to the efforts of Ms. Ettinger.

On February 26, 2003, shortly after Defendant MDOC learned that Plaintiff would be returning, Defendant MDOC began investigating the resume fraud allegations that resulted in the suspension of her license to practice psychology while she was working for Defendant Local. A disciplinary conference was scheduled for April 9, 2003. Debbi Bishop, one of Defendant International's union representatives, represented Plaintiff at the hearing. Before the conference, Plaintiff was also represented by a Defendant Local representative named Teresa Garcia-Blum. Plaintiff alleges that both Ms. Bishop and Ms. Garcia-Blum breached their duty of fair representation by, among other things, failing to adequately prepare for Plaintiff's disciplinary hearing. Plaintiff also alleges that various other Defendant Local representatives breached their duties of fair representation by mishandling Plaintiff's numerous grievances on various issues.

On June 19, 2003, Defendant MDOC issued an Employee Disciplinary Report terminating Plaintiff's employment. The parties dispute when Plaintiff learned of the termination. Defendant MDOC maintains that Plaintiff was told about the termination on June 19, 2003. Plaintiff maintains that she did not learn of the termination until after she received a copy of the disciplinary report in the mail on July 9, 2003. *See* Plaintiff's Response to Defendant Unions' Motion to Dismiss or in the Alternative, for Summary Judgment, at 9. Plaintiff's assertion does not square with the Complaint, however, which alleges that she learned of the termination on July 5, 2003, when she received a phone call from a union representative named Edward Mitchell. *See* Compl. at ¶ 40.

According to the Complaint, Mr. Mitchell informed Plaintiff that he heard that she had been terminated and he offered to file a grievance on her behalf. *See id.* at ¶ 42. The Complaint alleges that Mr. Mitchell failed to file the grievance, however, which required Plaintiff to file a grievance on her own behalf after she received the letter confirming her termination on July 9, 2003. Plaintiff alleges that Defendant Local breached its duty of fair representation by failing to file a grievance on her behalf after she was terminated.

Plaintiff filed a grievance challenging Defendant MDOC's termination of her employment on July 11, 2003, two days after receiving written notice of her dismissal. *See* Defendant's Ex. 45. Defendant MDOC denied the grievance, and Defendant Local pursued it to arbitration. Article 8 of the CBA provides that "[a]ll grievances must be presented promptly and no later than ten (10) week days from the date the employee because aware or by the exercise of reasonable diligence, should have become aware of the occurrence giving rise to the complaint." Compl. at ¶ 70. Article 9 of the CBA provides that "[f]ormal notification to the employee of disciplinary action shall be in the form of a letter or form spelling out charges and reasonable specifications, advising the employee of the right to appeal. The employee must sign for his/her copy of this letter, if presented personally, or the letter shall be sent to the employee by certified mail, return receipt requested. Dismissal shall be effective on the date of notice." *Id.*

On April 29, 2004, the arbitrator issued a written opinion finding that because Plaintiff learned of her termination on June 19, 2003, her grievance was filed beyond the 10-day window for filing grievances:

> At issue before this Arbitrator is whether, on June 19, 2003, the grievant, Dr. Shebra [sic] Simpson, became aware, or by the exercise of reasonable diligence, should have become aware of the occurrence giving rise to the underlying grievance.

> The determination of when Dr. Simpson became aware that the employer intended to terminate her employment is essential because whether or not the underlying grievance can be adjudicated pivots on the date of notification and the date of the filing of the grievance.
>
> The employer has presented consistent testimony that Dr. Simpson was verbally informed by Mr. Franks on June 19 that termination of her employment had been approved and that she needed to sign the Employee Departure Report. The Arbitrator does not dismiss Dr. Simpson's testimony that she never spoke with Mr. Franks on June 19. However, Dr. Simpson's termination does not appear to have been an ordinary or routine occurrence. For whatever reason, the Central Labor Relations office, the Regional HR Manager and the facility HR Officer all had a hand in ensuring that Dr. Simpson was notified of the discharge decision. It seems unlikely that Mr. Franks, with the type of exposure and interest shown in the matter by his superiors, would simply fluff off his responsibility to notify Dr. Simpson and then deliberately mislead those superiors to believe that he had telephone[d] Dr. Simpson and was waiting for her arrival to sign the paperwork.
>
> \*       \*       \*
>
> The Arbitrator also agrees with the union that Article 8 of the collective bargaining agreement cannot be read in isolation. However, while the notice requirements of Article 9 places on the employer the burden of securing a signature on the disciplinary notice or at least a signature acknowledging receipt of the written document, this language does not negate the negotiated language in Article 8 which specifically embraces the reasonable 'person' standard by specifying that the grievance time limits will begin when the grievant reasonably should have become aware that she may have a grievable action.
>
> \*       \*       \*
>
> Finally, the Arbitrator notes that imposing the language of Article 9 to the time lines for filing a grievance would cause a screeching halt to the grievance procedure. Grievants would either never report to the HR office, thereby causing the employer to chase them down like wounded animals, or they would simply never sign for the certified mail. Either practice would adulterate the parties' agreement and impose upon the dignity and respect due to all employees.

Defendants' Ex. 53. Based on the above reasons, the arbitrator denied Plaintiff's grievance as untimely.

7

.

**B.    Procedural History**

On October 25, 2004, Plaintiff filed the present Complaint in this Court. With this Complaint, Plaintiff alleges the following counts:

| | |
|---|---|
| Count I | Breach of Duty of Fair Representation by Defendant Unions; |
| Count II | Breach of Collective Bargaining Agreement - MDOC; |
| Count III | Contract Discrimination - 42 U.S.C. § 1981; |
| Count IV | Declaratory Judgment to Vacate Arbitrator's Decision; and |
| Count VI [sic] | Exemplary Damages. |

*See* Compl. (04-74162). With respect to Count I, Plaintiff alleges that Defendant Unions breached their duty of fair representation by, among other things, (1) failing to timely file a grievance after she was terminated by Defendant MDOC, (2) failing to adequately prepare for Plaintiff's disciplinary hearings, (3) failing to adequately communicate with Plaintiff, and (4) making various tactical errors in pursuing Plaintiff's many grievances. With respect to Count II, Plaintiff alleges that Defendant MDOC breached the CBA by firing her "unjustifiably" and without following the procedures set forth in the CBA. Plaintiff also alleges that Defendant MDOC terminated her in retaliation for her filing a previous discrimination action against Defendant MDOC. With respect to Count III, Plaintiff alleges that Defendant MDOC interfered with her "employment contract rights" by terminating her because of her race. *See* Compl. at ¶ 142. Plaintiff alleges that Defendant Local interfered with her "employment contract rights" by its "racially motivated substandard representation of her." Id. at ¶ 139. Finally, with respect to Count IV, Plaintiff alleges that the

arbitrator's April 29, 2004, decision denying her grievance violated the terms of the CBA, which requires that employees receive written notice of termination before the dismissal is effective. Although this matter has not proceeded to the discovery phase, both parties rely extensively on evidence generated in the related case of *Simpson v. UAW*, No. 04-70978 (E.D. Mich. July 6, 2005).

### III.  LEGAL STANDARD

**A.     Dismissal Under FED. R. CIV. P. 12(b)(6) and FED. R. CIV. P. 56**

A motion brought pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief may be granted tests the legal sufficiency of Plaintiff's claims. The Court must accept as true all factual allegations in the pleadings, and any ambiguities must be resolved in Plaintiff's favor. *See Jackson v. Richards Med. Co.*, 961 F.2d 575, 577-78 (6th Cir. 1992). While this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions. *See Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999). Furthermore, the Court need not accept as true legal conclusions or unwarranted factual inferences. The Court may properly grant a motion to dismiss when no set of facts exists that would allow Plaintiff to recover. *See Carter by Carter v. Cornwall*, 983 F.2d 52, 54 (6th Cir. 1993). A motion to dismiss for lack of exhaustion is "properly considered a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, rather than a Rule 12(b)(1) motion to dismiss for lack of jurisdiction." *Varga v. Rumsfeld*, 172 F. Supp. 2d 1323, 1324 (D. Colo. 2001); *Hoover v. Timken Co.*, No. 01-3905, 2002 WL 314951, *1 (6th Cir. 2002).

In deciding a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), this Court may only consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the [Court] may take judicial notice." 2 JAMES WM.

MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 12.34[2].  If, in deciding the motion, the Court considers matters outside the pleadings, the motion will be treated as one for summary judgment pursuant to FED. R. CIV. P. 56.  *See* FED. R. CIV. P. 12(b).

If the Court decides to treat the motion as one for summary judgment, summary judgment is appropriate only if the answers to the interrogatories, depositions, admissions, and pleadings combined with the affidavits in support show that no genuine issue as to any material fact remains and the moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c).  A genuine issue of material fact exists when there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citations omitted).  In application of this summary judgment standard, the Court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "If the evidence is merely colorable or is not significantly probative, summary judgment may not be granted."  *Anderson*, 477 U.S. at 249-50 (citations omitted).

The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial.  *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324.  The non-moving party must do more than show that there is some metaphysical doubt as to the material facts.  It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment.  *See*

*Moore v. Phillip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

**B.      Federal Jurisdiction Under the LMRA**

Jurisdiction for Counts I, II, and IV is predicated on § 301 of the LMRA, which provides that:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).  The LMRA incorporates the definitions in section 2 of the National Labor Relations Act, 29 U.S.C. § 152.  Section 152(2) states in relevant part: "The term 'employer' includes any person acting as an agent of an employer, directly or indirectly, but shall not include the United States or any wholly owned Government corporation or any Federal Reserve Bank, *or any State or political subdivision thereof* . . . ."  29 U.S.C. § 152(2) (emphasis added).  Section 152(3) states in relevant part: "The term 'employee' . . . shall not include any individual employed . . . by any other person who is not an employer herein defined."  29 U.S.C. § 152(3).  Section 152(5) states in relevant part: "The term 'labor organization' means any organization . . . in which employees participate and which exists for the purpose . . . of dealing with employers . . . ."  29 U.S.C. § 152(3). If Defendant MDOC is a "political subdivision," it is not an "employer," nor is Plaintiff an "employee" within § 301, nor is Defendant Local a union representing "employees."  Thus, the Court would lack jurisdiction over Counts I, II, and IV.  On July 19, 2005 this Court entered an Order to Show Cause regarding whether Defendant MDOC should be considered an "employer" for purposes of the LMRA.  Plaintiff, Defendant Local, and Defendant MDOC have responded.

## IV.  ANALYSIS

**A.     Plaintiff's LMRA Claims**

Plaintiff concedes that Defendant MDOC is a political subdivision of the State of Michigan. However, Plaintiff argues that the Court should nevertheless retain jurisdiction over Counts I, II, and IV.

First, Plaintiff argues that she should be allowed to amend her complaint to join specific MDOC officials to Count III (contract discrimination in violation of 42 U.S.C. § 1981).  The Court will allow this, as will be discussed later.  However, this does not save Plaintiff's LMRA claims (Counts I, II, and IV).  The fact that Plaintiff would be suing individuals rather than MDOC directly has no bearing on the LMRA issue.  Plaintiffs seem to interpret the LMRA to forbid only direct suits against political subdivisions of the State.  However, the jurisdictional constraint is broader: if the contract in question is with the State or a political subdivision, the employee cannot assert a LMRA claim, regardless of whom is being sued.  *See West v. Perry*, Nos. 95-1031/95-1033/95-1034, 1995 U.S. App. LEXIS 24662, *3 (6th Cir. 1995); *Rathbun v. Int'l Union of Operating Eng'rs*, No. 80-3343, 1983 U.S. App. LEXIS 12735, *5 (6th Cir. 1983); *Smith v. United Federation of Teachers*, No. 97-7678, 1998 U.S. App. LEXIS 22357, *3 (2d Cir. 1998); *Strasburger v. Board of Educ.*, 143 F.3d 351, 359-60 (7th Cir. 1998).

In a related argument, Plaintiff claims that even if claims against Defendant MDOC are dismissed, the claims against Defendant Local are valid because the employer is not a necessary party in a LMRA action.  This is true, but Plaintiff has again missed the point of the jurisdictional issue.  Employers are not necessary parties in a LMRA action, but the contract in issue still needs

to be covered by the LMRA. Since Plaintiff worked for a political subdivision of the State, she may not bring a LMRA claim against any party. Since federal jurisdiction for Counts I, II, and IV of Plaintiff's complaint are predicated on the LMRA, they must be dismissed.

**B.      Plaintiff's § 1981 Claim Against Defendant Local**

Plaintiff claims Defendant Local discriminated against by causing her to be terminated by MDOC, and by providing substandard representation of her during her grievance proceedings with MDOC. The first part of Plaintiff's claim is barred by res judicata. On March 16, 2004, Plaintiff brought suit against Defendant Local alleging, inter alia, that Local violated Plaintiff's § 1981 rights by causing her to be terminated by MDOC.[2] On July 6, 2005 this Court granted summary judgment for Local and dismissed Plaintiff's case.

Res judicata "bars a subsequent action between the same parties or their privies based upon the same claims or causes of action that were or could have been raised and litigated in a prior action." *Page v. Monroe City Dept. of Building and Zoning*, No. 02-1223, 42 Fed. Appx. 760, 761 (6th Cir. 2002). Res judicata applies when there is:

> (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.

*Id.* (quoting *Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995)).

Plaintiff's previous case involved the same parties (Plaintiff and Local), the same cause of action (violation of Plaintiff's § 1981 rights), and the same issue (whether Local wrongfully caused Plaintiff to be terminated from MDOC). Since the previous case was settled by a decision on the merits, Plaintiff is barred from re-litigating the issue.

---

[2]*Simpson v. UAW*, No. 04-70978 (E.D. Mich. July 6, 2005).

Plaintiff's claim of substandard representation is arguably barred as well. Res judicata is not limited to issues that were actually litigated; it also bars issues that should have been litigated. *Allen v. McCurry*, 449 U.S. 90, 94 (1980). The key is the harm the plaintiff is seeking to remedy: "When two successive suits seek recovery for the same injury, 'a judgment on the merits operates as a bar to the later suit, even though a different legal theory of recovery is advanced in the second suit.'" *Harrington v. Vandalia-Butler Bd. of Education*, 649 F.2d 434, 437 (6th Cir. 1981) (quoting *Cemer v. Marathon Oil Co.*, 583 F.2d 830, 832 (6th Cir. 1978).

In this case, the injury Plaintiff is seeking to remedy is the loss of her MDOC job. Plaintiff claims that Defendant Local's substandard representation of her during the grievance process caused her to lose her MDOC job. However, in her previous case, Plaintiff alleged that Local had caused her to be terminated from MDOC in the first place. The issue of Local's substandard representation is tied to the issue of whether Local caused the termination; Plaintiff is using both these claims to remedy the loss of her MDOC job. Plaintiff should not be allowed to split her claims by arguing the cause of her termination in one case, and her substandard representation in the grievance process in another.

Plaintiff could argue that the substandard representation issue was not ripe when the first suit was filed. Plaintiff's first suit was filed on March 16, 2004, and the grievance process was ended through arbitration on April 29, 2004. However, Plaintiff filed an amended complaint on July 12, 2004. Any claims regarding the alleged substandard representation should have been included in the amended complaint.

Even if Plaintiff's substandard representation claim is not barred by res judicata, it still fails as a matter of law. The elements of a prima facie case under § 1981 are the same as those under

14

Title VII. *Noble v. Brinker Int. Inc.*, 391 F.3d 715, 720 (6th Cir. 2004). To establish a prima facie case, Plaintiff must show that:

> (1) [She] is a member of a protected class; (2) [She] was qualified for [her] job and performed it satisfactorily; (3) despite [her] qualifications and performance, [she] suffered an adverse employment action; and (4) that [she] was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside [her] protected class.

*Parks v. City of Chattanooga*, No. 01-6543, 74 Fed. Appx. 432, 440 (6th Cir. 2003). In the context of Plaintiff's case, she must show that similarly situated non-protected individuals received superior representation from Local during a grievance process. However, Plaintiff has failed to produce any evidence supporting that proposition.

Plaintiff has alleged numerous facts supporting her claim that she received substandard representation, but has produced no evidence demonstrating that the alleged substandard representation was racially motivated. Plaintiff claims that similarly situated non-protected employees were treated more favorably in the context of her release from her Local position and return to MDOC. However, Plaintiff made exactly the same claims in her previous suit against Local. In that case, the Court found Plaintiff had failed to establish discrimination as a matter of law. As noted above, Plaintiff is barred from re-litigating this issue. To establish a § 1981 claim in the current case, Plaintiff must show similarly situated non-protected employees received more favorable representation in the grievance process.

Plaintiff alleges that "Defendant MDOC likewise violated the terms of the CBA by discharging Plaintiff without first informing her in writing that she was terminated. This was not done for other similarly situated white employees." Plaintiff's Response to Defendant Unions' Motion at 14. However, allegations regarding Defendant MDOC are insufficient to establish a

15

prima facie case against Defendant Local. Nowhere in Plaintiff's Complaint or various responses does Plaintiff allege that similarly situated non-protected individuals received superior representation from Local. Thus, Plaintiff cannot establish a prima facie case, and her § 1981 claim against Defendant Local fails as a matter of law.

**C.      Plaintiff's § 1981 claim against Defendant MDOC**

Plaintiff claims Defendant MDOC terminated her because of her race in violation of 42 U.S.C. § 1981. In its Motion for Summary Judgment, MDOC claims Eleventh Amendment Immunity. Eleventh Amendment immunity prevents a state or its agencies from being sued, absent specific Congressional abrogation or waiver by the state. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99-100 (1984). Congress did not abrogate Eleventh Amendment immunity for § 1981 claims, and Michigan has not waived its immunity. Thus, § 1981 suits against Michigan are barred by Eleventh Amendment immunity. *Freeman v. Michigan Dep't of State*, 808 F.2d 1174, 1179 (6th Cir. 1987). Since MDOC is a state agency protected by Eleventh Amendment immunity, Plaintiff's § 1981 claim against MDOC must be dismissed. *See Thompson v. Mich. Dep't of Corr.*, No. 01-1943, 25 Fed. Appx. 357, 358 (6th Cir. 2002).

Plaintiff asks leave to amend her complaint to include individual MDOC officials. Plaintiff's Response to Defendant MDOC's Motion at 3. The *Ex Parte Young* doctrine allows suit to be brought against state officials for future injunctive relief. *Pennhurst*, 465 U.S. at 102-03. However, an individual may not seek retroactive monetary relief from the state, even when state officials are sued pursuant to *Ex Parte Young*. *Id.* Since Plaintiff's claim against MDOC is primarily for retroactive monetary relief (Plaintiff's Compaint at ¶ 145), the *Ex Parte Young* doctrine does not seem to apply. However, Plaintiff may amend her complaint to bring claims against MDOC

16

officials in their individual capacities. Plaintiff will have thirty (30) days to so amend her complaint.

## V. CONCLUSION

For the above reasons, the Court HEREBY GRANTS Defendant MDOC's Motion for Summary Judgment [3] and Defendant Unions' Motion to Dismiss, or in the Alternative, for Summary Judgment [4]. Plaintiff's Complaint is HEREBY DISMISSED WITH LEAVE TO AMEND. If Plaintiff fails to amend her Complaint within thirty (30) days of the entry of this Order, Plaintiff's cause of action will be dismissed with prejudice. IT IS SO ORDERED.

        s/Lawrence P. Zatkoff
        LAWRENCE P. ZATKOFF
        UNITED STATES DISTRICT JUDGE

Dated: September 28, 2005

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on September 28, 2005.

        s/Marie E. Verlinde
        Case Manager
        (810) 984-3290